**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **ESTHER ETIENNE, individually and on behalf of all others similarly situated,** | **Civil Action Number:**<br>**1:16-cv-02359-WFK-JO** |
| **Plaintiffs,** | |
| **-against-** | |
| **RELIANT CAPITAL SOLUTIONS, LLC and JOHN DOES 1-25,** | |
| **Defendant.** | |

---

**PLAINTIFF'S <u>UNOPPOSED</u> OBJECTIONS**
**TO THE REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**
**ENTERED ON SEPTEMBER 25, 2018**

---

**MARCUS & ZELMAN, LLC**

**Yitzchak Zelman, Esq.**
**Email: yzelman@MarcusZelman.com**
**Ari H, Marcus, Esq.**
**Email: Ari@MarcusZelman.com**
**701 Cookman Avenue, Suite 300**
**Asbury Park, New Jersey 07712**
**Phone:(732) 695-3282**
**Fax:    (732) 298-6256**
*Attorneys For Plaintiff*

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT**……………………………………….................…………1

**STANDARD OF REVIEW**..................................................................................................2

**ARGUMENT**........................................................................................................................3

   **POINT I.   THE PROPOSED CLASS SETTLEMENT IS SUBSTANTIVELY FAIR**.......5

      **A.  Class Litigation Would Be Complex, Expensive And Lengthy**………………........6

      **B.  The Class Members' Reactions Support The Class Settlement's Approval**………7

      **C.  The Discovery Conducted Supports An Approval Of The Class Settlement**..........9

      **D.  There Are Risks In Establishing Liability And Statutory Damages**......................11

      **E.  The Risks Of Establishing Damages Support Approval Of The Settlement**.........13

      **F.  The Risks Of Maintaining The Class Action Through The Trial**...........................14

      **G.  Defendant's Ability To Withstand A Greater Judgment Does Not Weigh
         Against Approval Of The Proposed Settlement Class**.............................................15

      **H.  The Range Of Reasonableness Of The Settlement Fund Weighs Heavily In
         Favor Of Approving The Class Settlement**.............................................................16

   **POINT II.   THE PLAINTIFF IS AN ADEQUATE CLASS REPRESENTATIVE**..........19

   **POINT III.  A CLASS ACTION IS A SUPERIOR METHOD FOR RESOLVING
               THIS ACTION**.................................................................................................22

**CONCLUSION**………………………………………………………………......…24

i

## TABLE OF AUTHORITIES

*Alleyne v. Time Moving & Storage Inc.*,
    264 F.R.D. 41 (E.D.N.Y. 2010)........................................................................................10

*Aramburu v. Healthcare Fin. Servs., Inc.*,
    No. 02-CV-6535MDG, 2009 WL 1086938 (E.D.N.Y. Apr. 22, 2009)………………...5, 18

*Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*,
    875 F.3d 128 (2d Cir. 2017)...............................................................................................8

*Avila v. Riexinger & Assocs., LLC*,
    817 F.3d 72 (2d Cir. 2016)……………………………………………………………..9, 11

*Ayzelman v. Statewide Credit Servs. Corp.*,
    242 F.R.D. 23 (E.D.N.Y. 2007)……………………………………………………..3, 12

*Babcock v. C. Tech Collections, Inc.*,
    No. 1:14-CV-3124 (MDG), 2017 WL 1155767 (E.D.N.Y. Mar. 27, 2017)………......6, 10

*Beckman v. KeyBank, N.A.*,
    293 F.R.D. 467 (S.D.N.Y. 2013)......................................................................................16

*Beneli v. BCA Fin. Servs., Inc.*,
    324 F.R.D. 89 (D.N.J. 2018)...............................................................................................3

*Bonett v. Educ. Debt Servs., Inc.*,
    No. 01-6528, 2003 WL 21658267 (E.D. Pa. May 9, 2003).................................................2

*Bourlas v. Davis Law Assocs.*,
    237 F.R.D. 345 (E.D.N.Y. 2006).......................................................................................3

*Campos v. Goode*,
    No. Civ. 224, 2011 U.S. Dist. LEXIS 22959 (S.D.N.Y. Mar. 2011)……………………..12

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir.1974)………………………………………………………....7, 19

*Cope v. Duggans*,
    203 F. Supp. 2d 650 (E.D. La. 2002)..................................................................................3

*Copper v. Global Check & Credit Services, LLC*,
    No. 10–CV–145S, 2010 WL 5463338 (W.D.N.Y. Dec.29, 2010)…………………………14

*Cordero v. Collection Co., Inc.*,
    No. 10–CV–5960, 2012 WL 1118210 (E.D.N.Y. Apr.3, 2012)…………………………..14

*Cty. of Suffolk v. Long Island Lighting Co.*,

    907 F.2d 1295 (2d Cir. 1990)……………………………………………………………5

*D'Amato v. Deutsche Bank*,

    236 F.3d 78 (2d Cir. 2001)…………………………………………………………....5

*Davis v. J.P. Morgan Chase & Co.*,

    827 F. Supp. 2d 172 (W.D.N.Y. 2011)..................................................................16

*del Campo v. Am. Corrective Counseling Servs., Inc.*,

    254 F.R.D. 585 (N.D.Cal.2008)…………………………………………………………12

*Dona v. Midland Credit Management Inc.*,

    No. 10–CV–0825, 2011 WL 941204 (E.D.N.Y. Feb. 10, 2011)……………………………13

*Easterling v. Collecto, Inc.*,

    692 F.3d 229 (2d Cir. 2012).................................................................................8

*Fleisher v. Phoenix Life Ins. Co.*,

    No. 11-CV-8405 (CM), 2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015)..............................5

*Frank v. Eastman Kodak Co.*,

    228 F.R.D. 174 (W.D.N.Y. 2005)………………………………………………………...19

*Garland v. Cohen & Krassner*,

    No. 08-CV-4626 KAM RLM, 2011 WL 6010211 (E.D.N.Y. Nov. 29, 2011)…….6, 10, 13

*Gilliam v. Addicts Rehab. Ctr. Fund*,

    No. 05 Civ. 3452 (RLE), 2008 WL 782596 (S.D.N.Y. Mar. 24, 2008)…………………...18

*Gonzalez v. Healthcare Recovery Mgmt. Inc.*,

    No. 13-CV-1002, 2013 WL 4851709 (E.D.N.Y. Sept. 10, 2013)………………………...13

*Good v. Nationwide Credit, Inc.*,

    314 F.R.D. 141 (E.D. Pa. 2016).............................................................................3

*Hall v. ProSource Techs., LLC*,

    No. 14-CV-2502 (SIL), 2016 WL 1555128 (E.D.N.Y. Apr. 11, 2016)..........................6, 7

*Hartley v. Suburban Radiologic Consultants, Ltd.*,

    295 F.R.D. 357 (D. Minn. 2013).............................................................................22

*In re Agent Orange Prod. Liab. Litig.*,

    611 F. Supp. 1396 (E.D.N.Y. 1985)……………………………………………………18

*In re Am. Bank Note Holographics, Inc.*,

    127 F. Supp. 2d 418 (S.D.N.Y. 2001).................................................................5

*In re Austrian and German Bank Holocaust Litig.*,

    80 F.Supp.2d 164 (S.D.N.Y.2000)...................................................................6

*In re Luxottica Grp. S.p.A. Sec. Litig.*,

    233 F.R.D. 306 (E.D.N.Y. 2006).....................................................................17

*In re Marsh ERISA Litig.*,

    265 F.R.D. 128 (S.D.N.Y. 2010).....................................................................16

*In re Med. X–Ray Film Antitrust Litig.,*

    No. 93–CV–5904, 1998 WL 661515 (E.D.N .Y. Aug. 7, 1998)………………….......12, 15

*In re PaineWebber Ltd. P'ships Litig.*,

    171 F.R.D. 104 (S.D.N.Y. 1997)……………………………………………………12, 16

*In re Telik, Inc. Sec. Litig.*,

    576 F.Supp.2d 570 (S.D.N.Y.2008).................................................................5

*In re Warner Comm. Sec. Litig.*,

    618 F. Supp. 735 (S.D.N.Y. 1985)……………………………………………….......10

*Jeremy Salazar v. Midwest Servicing Grp., Inc.*,

    No. CV 17-0137 PSG (KSX), 2018 WL 4802139 (C.D. Cal. Oct. 2, 2018)........................3

*Jones v. CBE Grp., Inc.*,

    215 F.R.D. 558 (D. Minn. 2003).....................................................................22

*Kalish v. Karp & Kalamotousakis, LLP*,

    246 F.R.D. 461 (S.D.N.Y.2007)……………………………………………………...3, 22, 23

*Little-King v. Hayt Hayt & Landau*,

    No. 11-5621 (MAH), 2013 WL 4874349 (D.N.J. Sept. 10, 2013).......................................3

*Lorber v. U.S. Dep't of the Treasury*,

    No. 14-CV-675 (WFK)(VMS), 2016 WL 4581334 (E.D.N.Y. Sept. 2, 2016).....................2

*Mace v. Van Ru Credit Corp.*,

    109 F.3d 338 (7th Cir.1997)...........................................................................22

*Midland Funding, LLC v. Brent*,

    No. 3:08 CV 1434, 2011 WL 3557020 (N.D. Ohio Aug. 12, 2011).....................................3

*Mihelis v. Network Commercial Servs., Inc.*,
    No. 11-CV-2215 WFK ARL, 2014 WL 4829062 (E.D.N.Y. Sept. 29, 2014)......................2

*Morris v. Affinity Health Plan, Inc.*,
    859 F. Supp. 2d 611 (S.D.N.Y. 2012)...............................................................................16

*Nara v. Frank*,
    488 F.3d 187 (3d Cir. 2007)..............................................................................................2

*Newman v. Stein*,
    464 F.2d 689 (2d Cir. 1972)…………………………………………………………....19

*O'Connor v. AR Res., Inc.*,
    No. 3:08CV1703 VLB, 2012 WL 12743 (D. Conn. Jan. 4, 2012)....................................10

*Palmer v. Dynamic Recovery Sols., LLC*,
    No. 6:15-CV-59-ORL-40KRS, 2016 WL 2348704 (M.D. Fla. May 4, 2016).....................3

*Passafiume v. NRA Grp., LLC*,
    274 F.R.D. 424 (E.D.N.Y. 2010)……………………………………………………….3

*Peretz v. United States*,
    501 U.S. 923, 111 S.Ct. 2661, 115 L.Ed.2d 808 (1991).........................................................2

*Saunders v. Berks Credit & Collections, Inc.*,
    No. CIV. 00-3477, 2002 WL 1497374 (E.D. Pa. July 11, 2002).........................................3

*Schell v. Frederick J. Hanna & Assocs., P.C.*,
    No. 3:15-cv-418, 2016 WL 1273297 (S.D. Ohio Mar. 31, 2016)........................................3

*Schuchardt v. Law Office of Rory W. Clark*,
    No. 15-CV-01329-JSC, 2016 WL 232435 (N.D. Cal. Jan. 20, 2016)……………………..3

*Sykes v. Harris*,
    No. 09 CIV. 8486 (DC), 2016 WL 3030156 (S.D.N.Y. May 24, 2016)……………….....18

*Teachers' Ret. Sys. of Louisiana v. A.C.L.N., Ltd.*,
    No. 01-CV-11814(MP), 2004 WL 1087261 (S.D.N.Y. May 14, 2004)…………………..18

*Weber v. Goodman*,
    9 F.Supp.2d 163 (E.D.N.Y.1998)…………………………………………………...23

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982).................................................................................................5

*Weiss v. Zwicker & Associates, P.C.*,

     664 F.Supp.2d 214 (E.D.N.Y.2009)………………………………………………...14

*Weissman v. Gutworth*,

     No. 2:14-CV-00666 WHW CL, 2015 WL 3384592 (D.N.J. May 26, 2015)......................3

*Wright v. Stern*,

     553 F.Supp.2d 337 (S.D.N.Y. 2008)…………………………………………………5


Statutes and Other Sources

15 U.S. Code § 1692k(a)(2)(B)……………………………………………………………...20

28 U.S.C. § 636(b)(1)...............................................................................................................2

FRCP 72(b)(3)...........................................................................................................................2

Newberg on Class Actions 13:54 (5th ed.)……………………………………….…5, 9, 15

## PRELIMINARY STATEMENT

Plaintiff, Esther Etienne, respectfully submits the within Unopposed[1] Objections to the Report and Recommendation ("R&R") entered by the Honorable Magistrate Judge James Orenstein on September 25, 2018.  *See,* Docket 35.  Plaintiff brought this action alleging that the Defendant violated the Fair Debt Collection Practices Act (the FDCPA).  Plaintiff subsequently filed an Amended Complaint on October 2, 2016.  *See,* Docket 18.  As set forth in that Amended Complaint, the Defendant mailed a Collection Letter to the Plaintiff, advising her that she owed Touro College $5,502.59, which represented her "Total Balance As Of 03/03/2016". *See,* Docket 1-1; Docket 18, ¶24.  However, the Collection Letter nowhere advised the recipient that the amount of the debt might vary from day to day because of, for example, interest, late charges or other charges that may be accruing on the account.  *See,* Docket 1-1.  Plaintiff accordingly brought suit on behalf of herself and a class of similarly situated Touro College debtors. *See,* Docket 18, ¶12.

After the parties engaged in discovery, they agreed to resolve this matter on a class-wide basis.  This made sense, given the manageable size of the class (66 class members), the uniformity of the claims (each class member receiving the exact same collection letter) and the ability to resolve dozens of identical claims while obtaining meaningful substantive relief for each class member ($174.25 per class member for a single violation of the FDCPA).   This Court granted preliminary approval of the parties' proposed class settlement, and approved the proposed class notice which was then mailed out to the class members.  *See,* Docket 26.  The class notice was then sent out to the sixty-six (66) class members.  Of those class members, only two called the Plaintiff's counsel with questions about the settlement, which Plaintiff's counsel then explained to

---

[1] Defendant has indicated it does not oppose these Objections.

them.  Not a single one of the 66 class members – including the two who had the settlement details personally explained to them by counsel - chose to opt out of the proposed class settlement.

On October 19, 2017, the parties appeared before the Honorable Magistrate Judge Orenstein for the Final Fairness Hearing on the parties' Joint Motion for final approval of the class settlement.  At that time, the Court raised a number of concerns with the proposed class resolution, and granted the parties the opportunity to supplement their submissions to address those concerns. The parties then jointly submitted an extensive supplemental brief, setting forth why they believed the class settlement to be fair and reasonable.  *See,* Docket 33. Nevertheless, on September 25, 2018, the Magistrate Judge issued a Report and Recommendation recommending that this Court deny the Joint Motion to Certify the Class.  *See,* Docket 35.  The Plaintiff hereby respectfully objects to the Magistrate Judge's conclusions in the R&R, for the reasons set forth below.

## **STANDARD OF REVIEW**

Article III requires *de novo* review of a magistrate judge's Report and Recommendation where a party timely objects.  *Nara v. Frank*, 488 F.3d 187, 194 (3d Cir. 2007), citing *Peretz v. United States,* 501 U.S. 923, 111 S.Ct. 2661, 115 L.Ed.2d 808 (1991).  When objections are filed to a magistrate judge's report and recommendation, the district court is required to make a *de novo* determination of those portions of the report, findings or recommendations made by the magistrate judge to which there are objections. *See,* 28 U.S.C. § 636(b)(1); FRCP 72(b)(3); *Lorber v. U.S. Dep't of the Treasury*, No. 14-CV-675 (WFK)(VMS), 2016 WL 4581334, at *1 (E.D.N.Y. Sept. 2, 2016).  In conducting this *de novo* review, the district court may accept, reject or modify, in whole or in part any of the findings or recommendations made by the magistrate judge.  *See id.; Mihelis v. Network Commercial Servs., Inc.,* No. 11-CV-2215 WFK ARL, 2014 WL 4829062, at *1 (E.D.N.Y. Sept. 29, 2014).

## **ARGUMENT**

The class settlement jointly proposed by the parties is entirely fair and reasonable, and should be approved.  If approved, the class settlement would pay $174.25 to each class member who would have to do absolutely nothing to earn this money – an extremely high per-capita recovery for an FDCPA class action.  **Indeed, this may be the highest payout, per class member, ever awarded in an FDCPA class action**; after extensive searching on Westlaw and Google, Plaintiff's counsel has been unable to locate a single reported case which awarded more.[2]  This is not for lack of trying.  In approving an FDCPA class settlement that would pay each class member $77.46, the district court in *Bonett v. Educ. Debt Servs., Inc.,* No. 01-6528, 2003 WL 21658267 (E.D. Pa. May 9, 2003) specifically noted that "this amount is greater than many similar settlements, in similar class actions, in this district." *Id.,* at *7.

---

[2] Each of the following cases were court-approved FDCPA class settlements.  *See, Ayzelman v. Statewide Credit Servs. Corp.*, 242 F.R.D. 23, 28 (E.D.N.Y. 2007)(**$15.09** per FDCPA class member); *Passafiume v. NRA Grp., LLC*, 274 F.R.D. 424, 431 (E.D.N.Y. 2010)(**$2.87** per FDCPA class member); *Beneli v. BCA Fin. Servs., Inc.*, 324 F.R.D. 89, 94 (D.N.J. 2018)(**$3.82** per FDCPA class member); *Jeremy Salazar v. Midwest Servicing Grp., Inc.*, No. CV 17-0137 PSG (KSX), 2018 WL 4802139, at *4 (C.D. Cal. Oct. 2, 2018)(**$20** per FDCPA class member); *Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 678 (N.D. Cal. 2016)(**$14.63** per FDCPA class member); *Good v. Nationwide Credit, Inc.*, 314 F.R.D. 141, 150 (E.D. Pa. 2016) (**$13.25** per FDCPA class member); *Midland Funding, LLC v. Brent*, No. 3:08 CV 1434, 2011 WL 3557020, at *6 (N.D. Ohio Aug. 12, 2011)(**$17.83** per FDCPA class member); *Little-King v. Hayt Hayt & Landau*, No. 11-5621 (MAH), 2013 WL 4874349, at *14 (D.N.J. Sept. 10, 2013) (**$7.87** per FDCPA class member); *Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 355 (E.D.N.Y. 2006) (**$7.32** per FDCPA class member); *Cope v. Duggans*, 203 F. Supp. 2d 650, 653 (E.D. La. 2002)( **$11.90** per FDCPA class member); *Schell v. Frederick J. Hanna & Assocs., P.C.*, No. 3:15-cv-418, 2016 WL 1273297, at *3 (S.D. Ohio Mar. 31, 2016) (**$10** per FDCPA class member); *Palmer v. Dynamic Recovery Sols., LLC*, No. 6:15-CV-59-ORL-40KRS, 2016 WL 2348704, at *1 (M.D. Fla. May 4, 2016) (**$10.16** per FDCPA class member); *Weissman v. Gutworth*, No. 2:14-CV-00666 WHW CL, 2015 WL 3384592, at *1 (D.N.J. May 26, 2015)(**$100** per FDCPA class member); *Saunders v. Berks Credit & Collections, Inc.,* No. CIV. 00-3477, 2002 WL 1497374, at *5 (E.D. Pa. July 11, 2002)(**$62.54** per class member); *Kalish v. Karp & Kalamotousakis, LLP*, 246 F.R.D. 461, 464 (S.D.N.Y.2007) (**$2.50** per FDCPA class member).

In the R&R, the Magistrate Judge properly determined that the Rule 23 elements of (i) numerosity was satisfied by the 66 class members, that (ii) commonality was established given the uniform collection letter mailed to the Plaintiff and the remaining class members, that (iii) typicality was met for the same reason, that (iv) the legality of this boilerplate collection letter was an issue that predominated over the remaining issues, and that (v) Plaintiff's class counsel was adequate to represent the class. *See,* Docket 35, at 4, 16. Nevertheless, the Magistrate Judge found fault with the proposed settlement for a host of reasons, which can be summed up as follows:

- <u>Substantive Fairness</u> – The R&R concludes that the proposed settlement was substantively unfair, because (i) individual FDCPA claims are *generally* not complex and *usually* resolve quickly, (ii) that the class members would not understand the class notice approved by this Court, and that the lack of opt-outs did not therefore indicate the class members' acceptance of the settlement, (iii) that the parties did not engage in enough discovery, (iv) that there were no risks or difficulties with the case proceeding to trial, (v) that the class members were being committed to a lower individual recovery than the maximum damages they could seek if they sued individually, and that (vi) that there are no risks to maintaining a class action through trial.

- <u>Adequacy of the Class Representative</u> - The R&R concludes that the Plaintiff is an inadequate class representative and that her interests materially diverge from that of the putative class, simply because she will make more money than the class members if she settles this class.

- <u>Superiority</u> - The R&R found that a class would not be superior to individual lawsuits, where the class members could obtain potentially higher recoveries if they sued individually.

## I.   THE PROPOSED CLASS SETTLEMENT IS SUBSTANTIVELY FAIR.

The Second Circuit has set forth nine factors to be considered by the district court in reviewing a proposed class settlement for substantive fairness.  *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001); *Cty. of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1323–24 (2d Cir. 1990).  In applying these factors, "not every factor must weigh in favor of the settlement, but rather the court should consider the totality of these factors in light of the particular circumstances."  *Fleisher v. Phoenix Life Ins. Co.*, No. 11-CV-8405 (CM), 2015 WL 10847814, at *5 (S.D.N.Y. Sept. 9, 2015); *In re Telik, Inc. Sec. Litig.*, 576 F.Supp.2d 570, 575 (S.D.N.Y.2008).  "The primary concern is with the substantive terms of the settlement: Basic to this is the need to compare the terms of the compromise with the likely rewards of litigation."  *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982).

Ultimately, it should be the class members bound by the settlement who should get to decide whether their settlement is fair.  That is why "it is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy."  *Aramburu v. Healthcare Fin. Servs., Inc.*, No. 02-CV-6535MDG, 2009 WL 1086938, at *4 (E.D.N.Y. Apr. 22, 2009); *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001); *see also, Wright v. Stern*, 553 F.Supp.2d 337, 345 (S.D.N.Y. 2008) (Chin, D.J.) ("The fact that the vast majority of class members neither objected nor opted out is a strong indication that the proposed settlement is fair, reasonable, and adequate"); Newberg on Class Actions 13:54 (5th ed.) ("[I]f only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.").  Thus, when considering any of these various factors, the fact that none of the class members objected or opted out of the proposed class should speak volumes as to the fairness of the proposed settlement.

### A.  Class Litigation Would Be Complex, Expensive And Lengthy.

Class litigation is, by nature, complex and expensive, and face an outsized uncertainty of litigation.  *See e.g., In re Austrian and German Bank Holocaust Litig.*, 80 F.Supp.2d 164, 174 (S.D.N.Y.2000), aff'd, 236 F.3d 78 (2d Cir.2001)("Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them").  Denials of class certification invariably involve appeals brought under FRCP 23(f) which lengthens the litigation even longer.  Although the Magistrate Judge was of the view that "claims under the FDCPA are a regular staple of the court's docket, and they impose little meaningful work on the parties or the court" (Docket 35, at 8), that is simply not true of FDCPA class claims.  Thus, in *Garland v. Cohen & Krassner*, No. 08-CV-4626 KAM RLM, 2011 WL 6010211 (E.D.N.Y. Nov. 29, 2011), Judge Matsumoto found that this element was satisfied in a FDCPA proposed class settlement, noting that "the factual and legal issues in this case are not complex. Given the complexity of any class action lawsuit, however, it is reasonable to assume that absent the instant Settlement, continued litigation would have required extensive time and expense." *Id.,* at *7–8. In approving another FDCPA class settlement, Magistrate Judge Go agreed with this reasoning:

> Although this case is not complex, continuing this litigation would have resulted in delay and further expense. A trial and any post-judgment motions and appeals would have required further expenditure of both time and money. Absent a settlement, the costs incurred by continuing this litigation would likely have outweighed any potential recovery, particularly in light of the cap on statutory damages, as discussed below. In addition, the delay inherent in further litigation would reduce the value of any potential recovery…... On the other hand, the settlement provides certain compensation to the class members now, rather than awaiting an eventual resolution that would result in further expense without any definite benefit to class members.

*Babcock v. C. Tech Collections, Inc.*, No. 1:14-CV-3124 (MDG), 2017 WL 1155767, at *6 (E.D.N.Y. Mar. 27, 2017).  *See also, Hall v. ProSource Techs., LLC,* No. 14-CV-2502 (SIL), 2016

WL 1555128, at *6 (E.D.N.Y. Apr. 11, 2016)("The first *Grinnell* factor is satisfied where settlement will obviate the parties' need to incur further expenses in litigating their claims").

The R&R's reliance on the non-complexity of the *typical* FDCPA claim sheds no light on the inherent complexity of this FDCPA class action.  Nor does the R&R's reference to the sheer numbers of FDCPA claims that are filed and quickly resolved in this District, without any indication of how many of those claims were class claims that had actually advanced to the class certification stage.  Ultimately, this leads to the assumption in the Report that "even without the proposed class settlement, the parties will likely resolve this non-complex case quickly and with minimal expense" (*See,* Docket 35, at 9), when the exact opposite is true.

Without the proposed class settlement, the Plaintiff will be forced to accomplish the same goal of class certification – only this time, it would have to be through additional and expensive motion practice.  Deprived of a class settlement that both sides want, the parties would then have to proceed to dispositive motions, and then a jury trial, over the issues of liability and amount of statutory damages to be awarded to the class.  A resolution that can be reached "quickly and with minimal expense" is thus extremely unlikely in this proposed class action; at least, not without an approved class settlement.  It is therefore respectfully submitted that this first factor is satisfied, and the Plaintiff therefore objects to the R&R's conclusion that it was not.

**B.  The Class Members' Reactions Support The Class Settlement's Approval.**

66 class members were sent class notices approved by this Court.[3]  Only 2 of those class members had questions about the letters they received.  *See,* Docket 33-1.  As instructed on the

---

[3] Class notice was mailed to the last known addresses for each of the 66 class members identified by Defendant.  6 envelopes were returned by the United States Postal Service, of which 1 were returned by the United States Postal Service with a forwarding address, and was subsequently re-

class notice, they then called Plaintiff's counsel, who patiently advised them of what the settlement entailed, their rights to object or opt out if they so wished, and what they could expect to receive if they stayed in the class versus what they could receive if they opted out of the class.  *See id.* Those 2 class members elected to stay in the class.  So did all of the remaining class members who received the class notice.  This uniform choice should indicate how the class members favorably viewed the settlement and their ability to each receive $174.25 by doing absolutely nothing.

The R&R expresses concern that these class members must not have understood their rights under the Court-approved class notice.  *See,* Docket 35, 9-12.  The R&R explains that these class members are the same debtors whom the Complaint alleges were deceived by the boilerplate Collection Letter that they received, and that if these debtors did not understand the Collection Letter "it beggars belief" that these same debtors would understand the class notice approved by this Court.  *See id.,* at 10-11.  But this facially compelling logic is faulty, because there are two very different standards applied to deciding whether (1) a collection letter is deceptive under the FDCPA, and (2) whether a class notice is sufficiently clear to put a class member on notice as to his rights under a class settlement.

When deciding whether a Collection Letter violates the FDCPA, "the operative inquiry is whether the <u>hypothetical</u> least sophisticated consumer would be misled by the debt collector's misrepresentation."  *Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d 128, 137 (2d Cir. 2017) <u>citing</u> *Easterling v. Collecto, Inc.*, 692 F.3d 229, 234 (2d Cir. 2012).  Accordingly, a plaintiff need not show she herself was ever actually misled by the offending collection letter.  *See id.*  Concluding that these class members <u>must</u> be too stupid to understand the Court-approved

---

mailed.  In total, 61 Settlement Class members received actual notice of the settlement.  *See,* Docket 33, at 3.

class notice – since they all received a letter that would deceive the hypothetical least sophisticated consumer – misses this point entirely.  This is particularly true when considering that, by definition, the class is comprised of individuals who have some level of college education, given that it is specifically limited to consumers who incurred tuition debt to Touro College.  *See,* 4 Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 11.53, at 1167 (4th ed. 2002) (notice is "adequate if it may be understood by the average class member").  Here, the average class member is someone who has had at least *some* college exposure and could easily understand the Court-approved class notice.  The R&R accordingly erred when conflating this standard with the objective 'least sophisticated consumer' standard applicable to deciding liability under the FDCPA.  The Plaintiff accordingly objects to the R&R's conclusion that the class reaction weighs against approval of the class settlement.

**C.  The Discovery Conducted Supports An Approval Of The Class Settlement.**

As outlined by the parties, the parties engaged in discovery, with the Plaintiff issuing extensive written discovery in the form of Interrogatories, Document Demands and Requests for Admission.  *See,* Docket 35, at 12.  The Magistrate Judge took issue with the fact that "there is no indication in the record of how, if at all, Reliant responded."  *See id.*  But this is not accurate.  As submitted in the parties' joint briefing, the Defendant subsequently disclosed the number of debtors encompassed within the proposed class definition, along with its net worth, which is relevant to the FDCPA's statutory cap on class-wide statutory damages.   *See,* Docket 33, at 4-5.  Given that the Collection Letter did not include the language required by the Second Circuit in *Avila v. Riexinger & Assocs., LLC*, 817 F.3d 72, 77 (2d Cir. 2016), the Defendant's liability can be determined from the face of the Collection Letter.  As such, all the Plaintiff needed in discovery

was to establish that a class claim was viable, and so she obtained information in discovery showing exactly that.

As the parties have engaged in the discovery necessary to ascertain the strength and weaknesses of Plaintiff's claim, as well as the potential liability to Defendant, it is respectfully submitted that this factor weighs in favor of the proposed class resolution.  The stage of the proceedings and the amount of discovery completed are evaluated to ensure that the parties "have a clear view of the strengths and weaknesses of their cases." *In re Warner Comm. Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985), aff'd, 798 F.2d 35 (2d Cir. 1986).   Thus, in *Garland v. Cohen & Krassner*, supra, Judge Matsumoto found this factor was satisfied where "plaintiff's counsel represented to the court during the fairness hearing that discovery was limited to obtaining from the defendants net worth information and information regarding class members." *Garland v. Cohen & Krassner*, 2011 WL 6010211 at *7.

Similarly, in *Babcock v. C. Tech Collections, Inc.*, supra, Magistrate Judge Go found this factor was established where "this litigation settled after defendant provided written discovery concerning the extent of the class, net worth and the amounts that were collected from class members. The discovery obtained was sufficient for plaintiffs' counsel to analyze the merits of the case and damages before engaging in settlement negotiations."  2017 WL 1155767 at *7.  *See also, O'Connor v. AR Res., Inc.,* No. 3:08CV1703 VLB, 2012 WL 12743, at *4 (D. Conn. Jan. 4, 2012)(finding that this factor weighed in favor of approving an FDCPA class settlement when "the parties engaged in significant formal as well as informal discovery related to class size, certification, Defendant's process for collecting debts in Connecticut, and Defendant's net worth"); *Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 56–57 (E.D.N.Y. 2010) (granting final approval where the parties agreed to a settlement before exchanging formal discovery).

The Plaintiff accordingly objects to the R&R's conclusion that the parties did not establish that the necessary discovery had been conducted in this action.  Everything in the record instead demonstrates that the Plaintiff obtained everything she needed to make a full, reasoned and deliberate determination of the strengths and weaknesses of her claim.

**D.  There Are Risks In Establishing Liability And Statutory Damages.**

The parties demonstrated that there were two main risks to the Plaintiff and the class members in proceeding with a class action without a class settlement.  The first is the risk of establishing liability.  Although the Second Circuit has held that debt collectors must disclose that the balance might increase due to interest and fees - if the amount owed is not static - the Second Circuit specifically qualified its holding by stating that "we do not hold that a debt collector must use any particular disclaimer." *Avila v. Riexinger & Assocs., LLC*, 817 F.3d at 77.  Given that the Defendant's collection letter <u>did</u> expressly delineate the amount owing for principal, the amount owing for interest, as well as the amounts owing for collection costs and other charges, along with the total owed "as of" the date of the letter (*see,* Docket 1-1) there is the potential uncertainty as to whether this Collection Letter would comply with *Avila*.  As such, the class members do face risks by proceeding.

Contrary to the R&R's characterization, this is more simply offering a "shrug and the observation that anything can happen".  *See,* Docket 35, at 13.  Rather, there are real concerns with establishing that this Collection Letter is deceptive under the FDCPA, a fact that the R&R itself reflects.  *See,* Docket 35, at 9 (expressing skepticism that the class members would be "too unsophisticated to have understood that stating the amount of a debt 'as of' a specific date implies that the amount owed might change with the passage of time").  The risks of establishing liability are thus readily apparent.

Even if the class members prevailed on their claim, there is no guarantee of what the Court would award the Plaintiff or the Class, as the statute grants the courts wide discretion in awarding statutory damages up to the caps set by the Act.  With the presence of such litigation risks, it is respectfully submitted that this factor has been meet.  "Litigation inherently involves risks," both in establishing liability and damages.  *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997), aff'd, 117 F.3d 721 (2d Cir. 1997). "In assessing the adequacy of a settlement, a court must balance the benefits of a certain and immediate recovery against the inherent risks of litigation." *In re Med. X–Ray Film Antitrust Litig.,* No. 93–CV–5904, 1998 WL 661515 (E.D.N .Y. Aug. 7, 1998).  One purpose of a settlement is to avoid the uncertainty of a trial on the merits. Settlement eliminates the risk, expense and delay inherent in the litigation process. *See, Campos v. Goode*, No. Civ. 224, 2011 U.S. Dist. LEXIS 22959, at *14 (S.D.N.Y. Mar. 2011).

These exact risks were explored by Magistrate Judge Pollak in *Ayzelman v. Statewide Credit Servs. Corp.*, 242 F.R.D. 23 (E.D.N.Y. 2007).  Judge Pollak first noted "the risk of establishing liability also weighs in favor of approving the settlement" and that "plaintiffs' likelihood of success should be evaluated in light of the legal uncertainty created by the existing decisions under the FDCPA examining this theory of recovery."  *Id.,* at 27.  The *Ayzelman* court continued that, even if liability was ascertained, the risks of obtaining a lower recovery at trial also weighed in favor of class resolution because:

> "even if plaintiffs successfully established liability, the FDCPA does not require imposition of the maximum amount of statutory damages, as 'the decision whether to award statutory damages under the FDCPA and the size of the award are matters committed to the sound discretion of the district court'……. Thus, even if successful, the plaintiff class may not be entitled to the maximum statutory penalty of $7,500 available under the FDCPA. In this manner, the risk of establishing liability and damages supports settlement."

> *Id.,* at 27-28 (internal citations omitted).

It is therefore respectfully submitted that the risks in this action – both in establishing liability and in establishing that anything more than nominal damages should be awarded - weigh in favor of class resolution. *See, Garland v. Cohen & Krassner*, 2011 WL 6010211 at *7 (finding that "the risks associated with establishing liability are real" and that "given the small amount of damages available in cases brought pursuant the FDCPA, the benefits of immediate recovery outweigh the risks associated with ongoing litigation"). The Plaintiff therefore objects to the R&R's conclusion that this factor weighs against approval of the class settlement.

**E.  The Risks Of Establishing Damages Support Approval Of The Class Settlement.**

The R&R then takes issue with the fact that the class members would receive 'only' $174.25 each under the class settlement, noting that "If the court rejects the proposed settlement, each member of the putative class can establish liability as easily as Etienne, and has every reason to believe the court will award $1,000.00 - certainly Etienne has identified no reason to believe a court would exercise its discretion to award less or any factor that would favor such a result". *See,* Docket 35, at 14. This ignores the extensive caselaw cited by the parties in the supplemental briefing requested by the Court, which indicates otherwise. *See,* Docket 33, at 7-8. That caselaw shows that the class members have under reason to believe that they will not be awarded $1,000 if they are forced to bring their own individual FDCPA claims based on their receipt of a single collection letter.

As the Honorable Judge Gleeson noted, "awarding the statutory maximum under the FDCPA is appropriate in cases where the acts of the debt collector were particularly egregious." *Gonzalez v. Healthcare Recovery Mgmt. Inc.*, No. 13-CV-1002, 2013 WL 4851709, at *2 (E.D.N.Y. Sept. 10, 2013). However, courts have awarded a lesser amount "where there is no repeated pattern of intentional abuse or where the violation was technical." *Id.*, quoting *Dona v.*

*Midland Credit Management Inc.*, No. 10–CV–0825, 2011 WL 941204, at *3 (E.D.N.Y. Feb. 10, 2011) (awarding $500 in statutory damages where defendant left message on plaintiff's answering machine for the purposes of collecting a debt without indicating that call was from debt collector); *Weiss v. Zwicker & Associates, P.C.*, 664 F.Supp.2d 214, 218 (E.D.N.Y.2009) (awarding $500 in statutory damages where defendant was liable for one FDCPA violation, which did not appear intentional); *Cordero v. Collection Co., Inc.*, No. 10–CV–5960, 2012 WL 1118210, at *2 (E.D.N.Y. Apr.3, 2012) (awarding $250 in statutory damages where defendant sent plaintiff one letter requesting payment of an outstanding medical bill in order to avoid any further legal action); *Copper v. Global Check & Credit Services, LLC*, No. 10–CV–145S, 2010 WL 5463338, at *2 (W.D.N.Y. Dec.29, 2010) (awarding $250 in statutory damages where defendant called plaintiff's daughter several times, disclosed plaintiff's debt, and failed to provide proper notice of the debt).

This is a case where an award of $250.00 or $500.00 per individual FDCPA lawsuit is far more likely than the full $1,000.00 cap allowed by the FDCPA. Again, this claim involves an isolated collection letter sent to class members, not collection conduct that was repeated or particularly egregious. As such, assuring each class member – who would have to do no work, hire no counsel, and spend zero time – a recovery of $174.25 is clearly not the sellout of the class members that the R&R paints it to be. The Plaintiff therefore objects to the R&R's conclusion that this factor weighs against approval of the class settlement.

### F. The Risks Of Maintaining The Class Action Through The Trial.

Here again, the R&R does not properly consider the parties' joint briefing or the relevant caselaw in this area. The R&R states that the Plaintiff solely "relies on vague assertions of 'risks to this action' " in seeking to demonstrate the risks of maintaining the class action through trial.

*See,* Docket 35, at 14.  However, in addition to the risks of establishing both liability and damages extensively discussed in the parties briefing, the 'risks to this action' were specifically set forth in the joint briefing as follows: "if the proposed class resolution is not accepted and class action were litigated, it is likely that defendants would oppose class certification."  *See,* Docket 33, at 9.

The parties joint briefing then pointed to caselaw which held that this exact consideration was sufficient to satisfy this factor.  *See,* Docket 33, at 9, <u>citing</u> *In re Med. X–Ray,* 1998 WL 661515 <u>supra</u>, at *5, (possibility that defendants would challenge maintenance of a class in the absence of settlement was considered a risk to the class and potential recovery); *Garland v. Cohen & Krassner*, 2011 WL 6010211 at *8 (noting that this factor was met because if the class settlement was rejected and the case litigated, the defendants would likely oppose class certification).

The record makes clear that the parties did not merely make 'vague assertions of risks to this action', as the R&R puts it.  Instead, the parties specifically demonstrated the difficulties in establishing liability and damages, and then pointed out that if no settlement was achieved, the Defendant would oppose class certification, potentially depriving the class members of *any* recovery.  As such, the Plaintiff objects to the R&R's conclusion that the parties did not adequately address this factor, or that this factor weighs against approval of the class settlement.

### G. Defendant's Ability To Withstand A Greater Judgment Does Not Weigh Against Approval Of The Proposed Settlement Class.

The R&R concludes that the Defendant's ability to withstand a greater judgment automatically "clearly establishes that this factor does not support approval."  *See,* Docket 35, at 15.  This conclusion does not comport with how courts have traditionally treated this factor.  As one court explained, "evidence that the defendant will not be able to pay a larger award at trial tends to weigh in favor of approval of a settlement, since the prospect of a bankrupt judgment debtor down at the end of the road does not satisfy anyone involved in the use

of class action procedures. However, the converse is not necessarily true; i.e., the fact that a defendant is able to pay more than it offers in settlement does not, standing alone, indicate that the settlement is unreasonable or inadequate." *In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 129 (S.D.N.Y.), aff'd sub nom. *In re PaineWebber Inc. Ltd. Partnerships Litig.*, 117 F.3d 721 (2d Cir. 1997). This makes sense, because otherwise "only the most massive settlement awards could be deemed reasonable in cases against large corporations." *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 178 (W.D.N.Y. 2011).

As a result, "courts assign "relatively little weight" to this factor. *See, Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 620–21 (S.D.N.Y. 2012); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 178 (W.D.N.Y. 2011); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 140 (S.D.N.Y. 2010). Rather than finding a defendant's ability to withstand a greater judgment to weigh against final approval, most courts consider this fact to be "neutral". *See, Morris v. Affinity Health Plan, Inc.*, supra; *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013). The Plaintiff accordingly objects to the R&R's conclusion that this factor should weigh against class approval, and maintains that this factor should simply be considered as neutral.

### H. The Range Of Reasonableness Of The Settlement Fund Weighs Heavily In Favor Of Approving The Class Settlement.

The R&R incorrectly concludes that "the settlement fund needlessly limits putative class members' recovery to a fraction of what they could likely recover, regardless of whether the litigation proceeded as a class action or as several individual ones." *See,* Docket 35, at 15. As explained above, this is not the case. True, as the R&R points out, FDCPA claims "often settle on an individual basis under terms that give the plaintiff the maximum statutory award of $1,000.00 and the plaintiff's counsel a few thousand dollars in fees." *Id.,* at 7. However, this analysis of

what happens in the cases *that settle* does not fairly characterize what happens to cases that don't settle, and instead get awarded statutory damages following a hearing on the merits.  As set forth in Section E above, in those cases the courts typically do <u>not</u> award $1,000.00 to the FDCPA claimant absent repeated, intention or egregious conduct.  Instead, a far more likely result is that those class members who choose to sue individually (none have thus far, despite these collection letters being mailed out in early 2016) would be awarded around $250.00 for their claims – barely anything more than the $174.25 they could receive right now.

This right to immediate entitlement is something else that the R&R entirely fails to consider.  "The immediacy and certainty of a recovery is a factor for the court to balance in determining whether the proposed settlement is fair, reasonable, and adequate." *In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. 306, 316 (E.D.N.Y. 2006).  As Judge Weinstein explained

> Courts consistently have held that the expense and possible duration of the litigation should be considered in evaluating the reasonableness of a settlement. The present settlement, achieved after years of active litigation, must be balanced against the expense and delay necessary to achieve a potentially larger result after trial and appeals.
>
> Approval of the proposed settlement will mean a guaranteed recovery for class members. If not for the settlement, the case would have continued to be fiercely contested.....Settlement of this action before significant additional resources have been expended benefits the class. Class members will receive compensation now rather than rely on an uncertain recovery of an unknown sum-not likely to be much larger than the proposed settlement amount-at some point in the future.
>
> The essence of a settlement agreement is compromise, a yielding of absolutes and an abandoning of highest hopes. Each side gains the benefit of immediate resolution of the litigation and some measure of vindication for its position while foregoing the opportunity to achieve an unmitigated victory. The fact that the class potentially could have achieved a greater recovery at trial is not dispositive and does not preclude the court from finding that the settlement is within a "range of reasonableness" that is appropriate for approval.
>
> *In re Luxottica Grp. S.p.A. Sec. Litig.,* 233 F.R.D. at 316 (internal citations omitted).

In evaluating the proposed settlement, the R&R never once considers this important consideration, specifically raised by the parties in their jointly filed supplemental briefing.  *See,* Docket 33, 11-12.  This was error, because "much of the value of a settlement lies in the ability to make funds available promptly." *In re Agent Orange Prod. Liab. Litig.*, 611 F. Supp. 1396, 1405 (E.D.N.Y. 1985), *modified on other grounds*, 818 F.2d 179 (2d Cir. 1987). When a "settlement assures immediate payment of substantial amounts to class members, even if it means sacrificing 'speculative payment of a hypothetically larger amount years down the road,' " the settlement is reasonable.  *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452 (RLE), 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008) (quoting *Teachers' Ret. Sys. of Louisiana v. A.C.L.N., Ltd.*, No. 01-CV-11814(MP), 2004 WL 1087261, at *5 (S.D.N.Y. May 14, 2004)). *See also, Aramburu v. Healthcare Fin. Servs., Inc.*, No. 02-CV-6535MDG, 2009 WL 1086938, at *4–5 (E.D.N.Y. Apr. 22, 2009)("This settlement is well within the range of reasonableness, particularly in light of the value of obtaining certain compensation quickly").

In this action, the class members each can immediately obtain an award of $174.25 without any further delay.  Whether this action will continue (i) to the class certification stage without an approved class settlement or (ii) whether these class members will each have to individually file their own FDCPA lawsuits, these class members will be forced to wait an untold amount of time at a hope of obtaining a recovery that very likely will not be much greater than the one already obtained for them.

Ultimately, the R&R's basis for rejecting the range of reasonableness is the conclusion that class members could *possibly* make more money bringing individual lawsuits.  But the determination of whether a settlement amount is reasonable does not involve use "of a mathematical equation yielding a particularized sum." *Sykes v. Harris*, No. 09 CIV. 8486 (DC),

2016 WL 3030156, at *14 (S.D.N.Y. May 24, 2016).  "Instead, there is a range of reasonableness with respect to a settlement — a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972). The Second Circuit has explained that "the fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 (2d Cir.1974). "In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Id*. at 455 n. 2.

As such, the Plaintiff respectfully objects to the R&R's conclusion that the range of reasonableness weighs against approval of the class settlement.


## II.     THE PLAINTIFF IS AN ADEQUATE CLASS REPRESENTATIVE.

The R&R next concludes that the Plaintiff would be an inadequate class representative "because the parties' proposal is unfair as it needlessly harms the interests of putative class members" while giving some sort of undeserved windfall to the Plaintiff.  *See,* Docket 35, at 15. But obtaining $174.25 for each class member is not harmful to the interests of the class members – as explained above, it is actually quite close to what each of these class members would otherwise expect to obtain, and represents a per-capita recovery far beyond that approved in the typical FDCPA class settlement.  The 'windfall' highlighted by the R&R is the fact that Ms. Etienne alone will receive $1,000 for her individual claim under the FDCPA, as well as a $500 service award for stepping up and representing the absent class members.  *See,* Docket 35, at 16.  The R&R finds

19

that this means that Ms. Etienne's "materially diverge from those of the putative class, and that as a result, she is not an adequate class representative." *See id.*

This argument misses the mark on a number of levels.  First, the FDCPA specifically provides that in a class action the named plaintiff may recover (i) the statutory damages of up to $1,000 available as if an individual action had been brought, plus (ii) the amount that the court may award to the remaining class members.  *See,* 15 U.S. Code § 1692k(a)(2)(B).  Thus, the fact that the proposed class settlement "guarantees Etienne – alone out of the entire putative class – the maximum statutory award of one thousand dollars" does not render her an inadequate class representative.  *See,* Docket 35, at 16.  Indeed, this is exactly how the FDCPA's damages provision is structured, so that an FDCPA plaintiff need not decide between obtaining her statutory damages of up to $1,000 or taking on the commendable task of representing a class of absent debtors just to be be limited to the smaller per-capita recovery of the class.

Similarly, the R&R assumes that Ms. Etienne would only have an incentive to adequately represent the class if it settles now, because otherwise "the defendant's net worth would cap the prevailing class plaintiff's potential recovery at approximately two-thirds of the thousand-dollar award she could secure as an individual litigant who suffered no actual damages."  *See,* Docket 25, at 16.  But as set forth above, Ms. Etienne's recovery would not be capped in such a manner.  Thus, if the class settlement is not approved, Ms. Etienne can simply move for class certification without a class settlement.  If she is successful at certifying the class, Ms. Etienne can still seek her $1,000 in individual statutory damages.  She can similarly seek an additional monetary award in the same *pro rata* amount that each of the other class member would receive.  Finally, at class certification, she can still seek the same $500 service award from this Court for being the only class member to step up, hire counsel, and obtain recovery for 65 other absent individuals.

While the R&R does find that class counsel is adequate, it takes a parting shot at the agreed-upon attorneys' fees of $14,000, finding that this represents a windfall to counsel since these fees are "far more than would typically result from an individual settlement." *See,* Docket 35, at 15, 17. But, again, this is not a typical individual FDCPA claim. Instead, for the past three years, this claim has been alleged and litigated as a class action. The consented-to attorneys' fees of $14,000 is hardly a 'windfall' under these circumstances, and cannot be fairly compared to the attorneys fees awarded in typical individual FDCPA claims which the R&R found to last no longer than six months. *See,* Docket 35, at 8. For these reasons, the Plaintiff respectfully objects to the R&R's conclusion that Ms. Etienne is not adequate to represent the class.[4]

---

[4] The R&R identifies another reason to find Ms. Etienne inadequate, which is simply baseless. The R&R takes issue with a sentence in the Court-approved class notice which states, "Plaintiff's complaint does not allege any actual damages". *See,* Docket 25-3, at 6. The R&R found this statement to be "plainly incorrect" and that "a litigant who so misinforms the class members she purports to represent is not an adequate representative." *See,* Docket 35, at 11, footnote 6.

However, in crafting the Court-approved class notice, the Plaintiff hardly intended to deceive or 'misinform' the class members. While the Amended Complaint seeks actual damages in the *ad damnum* clause and alleged that "Defendant's violations of the FDCPA caused actual harm to the Plaintiff", the Amended Complaint nowhere alleges that any actual pecuniary damages was ever suffered by the Plaintiff. *See,* Docket 18, ¶ 33 ("Defendant's violations of the FDCPA caused actual harm to the Plaintiff"); Docket 18, at 9, Prayer for Relief, ¶ (c)(seeking an award of "actual damages"). To this point, there is a distinct difference between alleging *harm* suffered by the Plaintiff, which is necessary to establishing the Plaintiff's Article III standing to maintain this action and alleging *actual monetary damages* which the Plaintiff never once alleges she incurred in this action.

As such, this should not serve as a basis to find Ms. Etienne inadequate to represent this class, whose interests would otherwise go entirely unrepresented. To the extent that this point was not made entirely clear to the class members, certainly a revised class notice would be more appropriate than a wholesale denial of class certification and a finding that the class representative is inadequate.

### III.    A CLASS ACTION IS A SUPERIOR METHOD FOR RESOLVING THIS ACTION.

The R&R's final point is that class certification would not be a superior method for adjudicating this action "given the simplicity of the case, as well as the potential difference in recovery." *See,* Docket 35, at 18.  The R&R points to the FDCPA's attorney fee shifting provision as proof that there is enough incentive for claimants to bring individual lawsuits under the Act, citing to *Jones v. CBE Grp., Inc.*, 215 F.R.D. 558, 570 (D. Minn. 2003).

In *Jones,* the district court declined to certify an FDCPA class action where the potential recovery was de minimis due to the collection agency's net worth.  *See id.*  But the the majority of courts have rejected the *Jones* decision (including in that very same district), instead finding that certification of FDCPA class were warranted even when the class members could only expect a small amount of recovery.  *See e.g., Hartley v. Suburban Radiologic Consultants, Ltd.*, 295 F.R.D. 357, 379 (D. Minn. 2013)(certifying FDCPA class and expressly rejecting *Jones,* finding "the small amount of recovery is not a bar to class certification in this case"); *Kalish v. Karp & Kalamotousakis, LLP*, 246 F.R.D. 461, 464 (S.D.N.Y. 2007)(certifying FDCPA class and declining to follow *Jones* because "notwithstanding the possibility of higher individual recoveries, litigating as a class retains substantial value because it encourages the prosecution of claims en masse that would not be prosecuted individually"); *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir.1997)("we believe that a de minimis recovery (in monetary terms) should not automatically bar a class action" because "true, the FDCPA allows for individual recoveries of up to $1000. But this assumes that the plaintiff will be aware of her rights, willing to subject herself to all the burdens of suing and able to find an attorney willing to take her case").

In *Weber v. Goodman*, 9 F. Supp. 2d 163, 170 (E.D.N.Y. 1998), then-Chief Judge Sifton rejected the notion that a small recovery for the class members should weigh against certification of an FDCPA class.  The *Weber* court acknowledged that the putative class members would receive "a maximum recovery of under $2—substantially less than the damages available in individual suits."  *Id.,* at 169.  Nonetheless, the *Weber* court certified the class noting that "aside from plaintiff, no individual who received the form letter has attempted to sue defendants for their alleged violation of the FDCPA. The small damage awards available to individual plaintiffs under the FDCPA are a likely factor in the lack of individual lawsuits."  *Id.,* at 170.  The *Weber* court thus found that certifying the FDCPA class where each class member would get less than two dollars was better than not certifying the class at all, since "it is unlikely that any proposed class member will bring an individual action against defendants for their alleged violations of the FDCPA."  *Id.,* at 171.

As in *Weber,* it is unlikely that any of the 66 class members in this action would seek to now bring their individual claims.  These class members all received these collection letters in 2016, and no such suits have been brought by these class members.  While this case was pending for the past three years, not a single putative class member has sought to bring an individual claim outside of this class action.  Thus, denial of the class settlement is not likely to result in the class members suddenly waking up and seeking $1,000 in individual lawsuits.  Instead, it is far more likely to result in the class members not seeking or receiving <u>anything</u>.  This would be an entirely undesirable result, particularly when there is a jointly proposed outcome before this Court which would give each class member $174.25.  *See e.g., Kalish v. Karp & Kalamotousakis, LLP,* 246 F.R.D. 461, 464 (S.D.N.Y. 2007)(finding that, even through greater recoveries could be obtained in individual FDCPA lawsuits brought by the class members, "this is not a situation where

claimants, waiting at the courthouse door to assert their FDCPA rights, will be denied justice by class certification. The unfortunate reality of this situation is that most of Defendant's approximately 700 FDCPA violations would probably go unnoticed absent this lawsuit."). The Plaintiff therefore respectfully rejects the R&R's conclusion that the proposed class-wide resolution would not be a superior method of adjudicating this action.

## CONCLUSION

It is respectfully submitted that the parties' Joint Motion for final approval of the class settlement be granted in its entirety, and that the R&R be rejected. This proposed class settlement will give the class members real, tangible, benefits, by awarding each individual class member hundreds of dollars ($174.25) they otherwise are unlikely to receive. The unwillingness of a single member to object, opt out or bring their own individual lawsuit clearly indicates the favorable reaction of the class to this settlement. It is therefore respectfully requested that the parties' Joint Motion for Final Approval of the class settlement be granted in its entirety, together with such other and further relief as this Court deems just and proper.[5]

Dated:  October 8, 2018                                Respectfully submitted,

                                                                            /s/ Yitzchak Zelman

_____

[5] It is also respectfully requested that the Plaintiff's Motion for Attorneys' Fees and Costs be granted in its entirety. The R&R did not address this Motion, simply concluding that if this Court adopts the R&R it should also deny the Motion for Fees as premature. *See,* Docket 35, at 18. However, the R&R should be rejected for the reasons set forth above, and the Motion for Fees is therefore not premature.

The Motion for Fees and Costs is unopposed, the requested fees and costs will not come out of the class fund or otherwise impact the class, and the Motion was supported by detailed time records establishing that the sought time was actually incurred. *See,* Docket 30. Certainly the additional work required in crafting these extensive Objections puts the Plaintiff's fees far past that point; however, these fees and costs were stipulated to over a year ago, so the Plaintiff cannot now seek an additional amount of fees and costs for this extra work.

Yitzchak Zelman, Esq.
Ari H. Marcus, Esq.
**MARCUS & ZELMAN, LLC**
701 Cookman Avenue, Suite 300
Asbury Park, New Jersey 07712
(732) 695-3282 telephone
yzelman@marcuszelman.com
Attorneys for Plaintiff